<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JULIUS J. BOEGLIN, | : | |
| | : | Civil Action No. 08-4342 (PGS) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHELE R. RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>                     Counsel for Respondents
Julius J. Boeglin                     Barbara A. Rosenkrans, Esq.
New Jersey State Prison               Essex Co. Prosecutor's Office
West Compound, One Right              Essex Co. Courts Building
Third & Federal Streets               50 West Market Street
Post Office Box 861                   Newark, NJ   07102
Trenton, NJ   08625-0861

**SHERIDAN**, District Judge

     Petitioner Julius J. Boeglin, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Michele R. Ricci and the Attorney General of New Jersey.

     For the reasons stated herein, the Petition must be denied.

## I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> Defendant, Julius J. Boeglin, was charged along with co-defendants Richard Irizarry and Renee Taylor in connection with the homicide of Angel LaBoy on February 7, 1990.
>
> ...
>
> The essence of the State's case was that defendant, who allegedly ran a drug ring out of the Newark warehouse of his forklift business, was angry at the victim, Angel LaBoy, because he suspected LaBoy of "fingering" him for a drug arrest, because LaBoy was delinquent in paying a drug debt, and because he wanted "respect" on the streets.  The State sought to prove that Boeglin hired the shooter, co-defendant Richard Irizarry, who was one of his enforcers in the drug business.
>
> The essence of the defense was that the State's witnesses were compromised by their own criminal exposure and expectations of leniency;[fn] that co-defendant Irizarry acted on his own or at the behest of someone else; that another associate, Raymond Camacho, told the police Boeglin was behind the killing because Camacho was angry at Boeglin's brother over an allegedly stolen car; and that any admissions made by Boeglin in his statement to police were the result of beatings while in custody.
>
> [fn] The prosecutor's words in closing were apt in one respect:  his case depended on the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

testimony of many witnesses whose own
histories potentially compromised their
credibility.  He said:

> Remember I told you at the beginning,
> when you cast a play in hell you don't
> expect the characters to be angels.
> Well, what a devil's crew that we have
> and what a devil's agreement that had to
> be made in many cases[.]

...

Defendant's trial was severed from proceedings
against his co-defendants, Richard Irizarry and Renee
Taylor.  In all, twenty-one witnesses appeared for the
State and thirteen witnesses appeared for the defense
over the course of a thirteen-day trial in 1992.
Irizarry testified for the State under a grant of use
immunity.  Taylor testified for the defense, against
the advice of her attorney and without immunity.

There is no dispute that Irizarry actually shot
LaBoy on a street in Newark at around eight o'clock on
the evening of February 7, 1990.  LaBoy was shot five
times with .32 caliber bullets, two of which killed
him.  There is also no dispute that several weeks
earlier, on January 12, Boeglin was arrested on drug
charges at the warehouse where he maintained a forklift
business, Lift Masters.  According to Detective Gerald
Buglione, defendant's arrest actually resulted from
LaBoy's tip, although Boeglin offered evidence that he
suspected someone else as the informant.

Six witnesses for the State testified to their
roles in defendant's drug operation.  Their combined
testimony established virtually without contradiction
that Boeglin had complained about money LaBoy owed him;
that LaBoy had been abducted on Boeglin's order several
weeks before his death; that Boeglin had offered
payment and intended that LaBoy's abductors kill him at
that time; that Boeglin bragged about LaBoy's death
under the mistaken impression that it had been
accomplished; that he was angry when he discovered that
LaBoy was still alive; and that he kept a "hit list" of
those who owed him drug money and that LaBoy was on it.

There was uncontradicted testimony that Boeglin brought two boxes of Winchester Western .32 caliber bullets on February 7, using a different name and identification.  Those boxes were found in a sewer in Roxbury township, where Camacho reported dumping them at Boeglin's instructions.  One box was full, and one was missing seven rounds.  Casings found at the scene of the murder were consistent with the ammunition Camacho had dumped.

Several State's witnesses placed Boeglin with Richard Irizarry on the evening of LaBoy's murder, both immediately before and after the shooting.  These witnesses also testified to Boeglin's direct involvement in supplying Irizarry with the murder weapon and ammunition; disposing of the weapon; and driving Irizarry to and from the murder site.  On the night of the murder, Boeglin told Camacho "no more of these people going to beat me for no more coke, no more money because I got rid of that scum LaBoy."  Later, Boeglin was overheard telling Camacho "We got him.  We did him.  I got Angel LaBoy."

Co-defendant Richard Irizarry sold drugs and acted as a courier for defendant.  According to Irizarry, on the night of the murder, Boeglin told Irizarry that he wanted to kill LaBoy because LaBoy owed him $1,800 and had set him up for the drug arrest.  Boeglin offered Irizarry $1,000 for the job.  Renee Taylor picked Boeglin and Irizarry up in her car; Boeglin pulled out a .32 caliber automatic handgun, handed it to Irizarry and ordered him to kill LaBoy, who had just walked by on the sidewalk.  Irizarry claimed he did it because Boeglin threatened his family; that he tried to warn LaBoy, but then he saw Boeglin get out of the car pointing a gun at him and ordering him to shoot. Irizarry and LaBoy then fought over Irizarry's gun, and Irizarry shot LaBoy five times.

While Irizarry's version of the night's events differed substantially from Boeglin's own statement, and conflicted with Taylor's version, Boeglin's statement corroborated significant elements of the facts related by Irizarry.

In his statement to police, defendant said "no" to the questions "Did you have anything to do with the murder of Angel LaBoy?" and "Did you pay anyone to kill

4

Angel?"  However, he admitted in his statement that
Irizarry told him he was going to kill LaBoy; that
Irizarry asked him for money to buy guns; that Irizarry
claimed he needed a gun to defend himself from laBoy
and other unidentified persons; that he, Boeglin, was
the intermediary when a James Gaskin brought a .32
caliber gun to Irizarry to pay off his own debt; that
Irizarry took the gun from Gaskin in boeglin's
presence; and that when Irizarry said he needed more
bullets, boeglin purchased the bullets along with David
Irizarry and was present when they were handed to
Richard Irizarry.

     Boeglin also claimed that when Irizarry said on
the day of the murder that he was going to "take care
of it tonight," Boeglin did not want any part of it and
left the house.  While he was out driving with Taylor,
he heard shots and "saw a guy fall down."
Nevertheless, Boeglin admitted in his statement that
when Irizarry told him that he "might need a ride
later," Boeglin told him to page him.  When Irizarry
paged him, Irizarry picked him up.  Irizarry told him he
had shot and killed LaBoy, and at Irizarry's request,
Boeglin drove to Felix Aponte's house and gave Felix
the gun to dispose of.  Boeglin then drove Irizarry out
of Newark to the suburbs, got him liquor and cocaine
and eventually drove him home to Newark.  Boeglin also
stated that Irizarry later threatened to go to the
police if Boeglin didn't give him $5,000.

     Defendant called several witnesses besides Renee
Taylor.  Those witnesses included his father, brothers,
sisters, another girlfriend and a former employee.  All
denied knowledge that Boeglin ran a drug operation,
although they were aware of his own cocaine use.
Several testified that defendant suspected someone
other than LaBoy as the informer.  Several also
confirmed that LaBoy owed defendant money.

     Renee Taylor was defendant's key witness.  She
testified that defendant used drugs and "hung out" with
the wrong people.  Taylor's testimony at trial can be
summed up as follows.  She denied that she or Boeglin
were ever involved in a drug-selling operation and she
denied that either of them had a gun on the night of
LaBoy's murder.  She did, however, testify to their
whereabouts and Irizarry's whereabouts on that night,
although she denied that Irizarry displayed a gun

before the shooting, and she claimed to have been
terrified when Irizarry got into the car with a gun
after the shooting.  She claimed she never heard
Boeglin tell Irizarry to shoot LaBoy.

Taylor also testified that she saw Boeglin in
police custody with bruises he had not had before his
arrest.  The arresting officer, Ruben Contreras,
testified that he saw scratches on defendant's hands
and marks on his eye when he came to defendant's door
to arrest him, and that when asked about them,
defendant said he had been in a fight.

Taylor was confronted in cross-examination with
statements that she gave either at the grand jury or in
her written statement to police on the night she and
Boeglin were arrested.  Because of the omission of
Taylor's written statement from the record before us,
it is impossible to determine precisely what that prior
statement included.  Suffice it to say that her
response to each inconsistency was that the police put
the words into the statement, that she only looked it
over but didn't really read it before signing it, and
that she signed because the police led her to believe
that they would stop beating Boeglin and let both of
them go home if she cooperated.

(State v. Boeglin, Opinion of Superior Court of New Jersey,

Appellate Division, at 1, 3-4, 7-12 (Aug. 31, 2000).)

B.   Procedural History

Following a jury trial in the Superior Court, Law Division,

Essex County, Petitioner was convicted of conspiracy to commit

murder, N.J.S.A. 2C:5-2 and 2C:11-3; first degree knowing or

purposeful murder, N.J.S.A. 2C:11-3a(1); unlawful possession of a

weapon, N.J.S.A. 2C:39-5b; and possession of a weapon for an

unlawful purpose, N.J.S.A. 2C:39-4a.[2]  The conspiracy and murder

---

[2] The jury found Petitioner not guilty of capital murder
and, thus, not subject to the death penalty.  The jury also

counts were merged for sentencing, and Petitioner was sentenced on those counts to a life term with a thirty-year parole disqualifier.  The weapons counts were also merged for sentencing, and Petitioner was sentenced to a consecutive ten-year term on those counts.  Judgment was entered in the trial court on July 2, 1992.  (Answer, Ex. 3.)

Petitioner timely filed a pro se notice of appeal, which was dismissed without prejudice, on his motion, to allow him to pursue a state post-conviction relief ("PCR") petition.

In his first state PCR petition, Petitioner alleged (1) that trial counsel had not been informed that co-defendant Irizarry had testified at trial under a grant of testimonial immunity, and (2) that certain evidence should have been suppressed. Petitioner later withdrew the first claim and the PCR court denied the second on August 28, 1997.  (Verified [Second] Petition for Post-Conviction Relief at 3-5, Answer, Ex. 16.) Petitioner then filed a combined appeal to the judgment of conviction and the denial of PCR relief.[3]

---

acquitted Petitioner of retaliation against a witness and witness tampering.

    [3] The State did not, in the Appellate Division consideration of the combined appeal, challenge the timeliness of the direct appeal to the conviction, and the Appellate Division did not indicate that it considered the direct appeal portion of the combined appeal as untimely.  Accordingly, this Court will treat the appeal as timely in determining the date when the conviction became "final" for federal habeas purposes.  See Jimenez v. Quartermain, 129 S.Ct. 681 (2009) (state court's grant of right

In that appeal, Petitioner made the following arguments:

POINT I:  THE PROSECUTORS' CONDUCT FROM THE INCEPTION
OF THIS CASE AT THE GRAND JURY THROUGH THE IMPROPER AND
OFFENSIVE CROSS-EXAMINATION OF A DEFENSE WITNESS AND IN
THE OPENING AND SUMMATION OF COUNSEL DEPRIVED THE
DEFENDANT OF A FAIR TRIAL AS GUARANTEED BY THE UNITED
STATES AND NEW JERSEY CONSTITUTIONS.  ...

POINT II:  THE TRIAL COURT COMMITTED REVERSIBLE ERROR
AND DEPRIVED DEFENDANT OF DUE PROCESS WHEN IT FAILED TO
PRECLUDE EVIDENCE OF "OTHER CRIMES" ALLEGEDLY COMMITTED
BY DEFENDANT.  ...

POINT III:  THE ADMISSION INTO EVIDENCE OF HEARSAY
STATEMENTS MADE BY THE DECEDENT WAS ERRONEOUS UNDER NEW
JERSEY LAW AND VIOLATED THE DEFENDANT'S SIXTH AMENDMENT
RIGHT TO CONFRONT WITNESSES AGAINST HIM.  ...

POINT IV:  DEFENDANT WAS DEPRIVED OF HIS RIGHT TO A
FAIR AND IMPARTIAL JURY BY THE TRIAL COURT'S
PRECIPITOUS INCARCERATION OF A CRUCIAL DEFENSE WITNESS
FOLLOWED BY ITS FAILURE TO DISMISS THE THREE JURORS WHO
READ ABOUT THE ARREST IN THE NEWSPAPER.  ...

POINT V:  THE TRIAL COURT DENIED DEFENDANT A FAIR TRIAL
WHEN IT LIMITED THE CROSS-EXAMINATION OF A CRUCIAL
STATE WITNESS AND WHEN IT EXCLUDED RELEVANT EVIDENCE
WHICH WOULD HAVE CONTRADICTED THE TESTIMONY OF TWO
OTHER IMPORTANT STATE WITNESSES AND GIVE RISE TO A
REASONABLE DOUBT AS TO DEFENDANT'S GUILT.  ...

POINT VI:  THE TRIAL COURT'S CHARGE TO THE JURY AT THE
CLOSE OF THE CASE, BOTH IN WHAT IT INCLUDED AND IN WHAT
IT OMITTED, WAS CLEARLY ERRONEOUS AND CONSTITUTED PLAIN
ERROR, DEPRIVING DEFENDANT OF A FAIR TRIAL AND DUE
PROCESS OF LAW.  ...

POINT VII:  THE EVIDENCE SEIZED AS A RESULT OF THE
WARRANTLESS SEARCHES OF DEFENDANT, HIS CAR AND HIS
PLACE OF BUSINESS SHOULD HAVE BEEN SUPPRESSED.  ...

---

to file out-of-time direct appeal resets date when conviction
becomes "final" under AEDPA).

(Appellant's Brief on Appeal from the Final Judgment of
Conviction, at i-iii, Answer, Ex. 11.)

In an Opinion filed on August 31, 2000, the Appellate
Division affirmed Petitioner's convictions, but vacated his
consecutive ten-year sentence on the weapons charges, and
remanded for entry of a corrected judgment of conviction.[4]
(Answer, Ex. 14.)  The Supreme Court of New Jersey denied
certification on January 10, 2001.  State v. Boeglin, 167 N.J.
86, 769 A.2d 1049 (2001).  Petitioner did not petition the United
States Supreme Court for a writ of certiorari.

Petitioner's second state PCR petition was filed on January
4, 2002.  In the second PCR petition, Petitioner alleged that his
trial counsel had provided constitutionally deficient
representation, that his first PCR counsel had provided
constitutionally deficient representation (by failing to raise
claims of ineffective assistance of trial counsel), and that his
appellate counsel had provided constitutionally deficient
representation.  In the second PCR petition, Petitioner
acknowledged that more than nine years had elapsed since the
judgment of conviction was filed, but asserted that the five-year
bar of New Jersey Court Rule 3:22-4(a) should not apply because
application of the bar would constitute a "fundamental

---

[4] The record provided to this Court does not reflect when
the corrected judgment was entered.

injustice." (Verified [Second] Petition for Post-Conviction Relief, Answer, Ex. 16.)

The second PCR court denied relief, holding, first, that the Petition was time-barred and, then, that the allegations were either previously decided or meritless. (Tr. of June 24, 2003.) Thereafter, Petitioner moved for reconsideration and for recusal of the trial judge. (Motion for Reconsideration, Answer, Ex. 21.) Petitioner also filed an application in January 2004, which was variously characterized as an amendment to the second PCR petition or as a separate third PCR petition. Following a hearing before a new judge, that judge held, also, that the second PCR petition was time-barred under state law. That court also held that, to the extent the January 2004 filing could be construed as a third PCR petition, it was untimely. Finally, the court held that all other claims were either barred under state law because they had been decided previously or because they could have been, but were not, previously raised. With respect to the sole claim that had not been raised previously, the court also held that the claim was both time barred and meritless. (Tr. of Feb. 25, 2004; Order denying motion for reconsideration (Feb. 27, 2004), Answer, Ex. 22.)

On appeal, the Appellate Division elected to exercise its discretion to deal with the substantive merits of Petitioner's claims, rather than to deal with the question whether the second

10

PCR petition was time-barred.  State v. Boeglin, 2008 WL 2520573 at *2 (N.J. Super. App. Div. June 26, 2008).  The Appellate Division affirmed the denial of relief.  On September 24, 2008, the Supreme Court of New Jersey denied certification.  State v. Boeglin, 196 N.J. 466 (2008).

This Petition, dated August 18, 2008, was received in this Court on September 3, 2008.[5]  Here, Petitioner asserts the following grounds for relief:

GROUND ONE:  PETITIONER'S GUARANTEED UNITED STATES CONSTITUTIONAL RIGHTS TO COMPULSION, TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED DUE TO PROSECUTORIAL MISCONDUCT, OR IN CONNECTION WITH, PETITIONER'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL HAVING BEEN VIOLATED.[6]  ...

GROUND TWO:  PETITIONER'S GUARANTEED UNITED STATES CONSTITUTIONAL RIGHTS TO CONFRONTATION, TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED BY THE ADMISSION INTO EVIDENCE OF HEARSAY STATEMENTS MADE BY THE DECEDENT AND OTHER WITNESSES, OR IN CONNECTION WITH, PETITIONER'S

---

[5] This Petition was accompanied by a Motion for Stay, pending conclusion of the direct appeal of the second PCR petition, then pending before the Supreme Court of New Jersey. As the Supreme Court of New Jersey entered its decision on September 24, 2008, the Motion for Stay will be denied as moot.

[6] More specifically, Petitioner complains of the prosecutor's remarks during opening and closing statements (characterizing Petitioner as someone who thought he was "the Godfather" in an underworld crime organization), and his alleged intimidation of witnesses (including unlawful beatings and/or arrest of one or more witnesses and accusing witness Renee Taylor, without foundation, of helping Petitioner establish a prostitution ring).

RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL HAVING
BEEN VIOLATED.[7]  ...

GROUND THREE:  PETITIONER'S GUARANTEED UNITED STATES
CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL
WERE VIOLATED BY THE TRIAL COURT'S FAILURE TO PRECLUDE
EVIDENCE OF "OTHER-CRIMES" AND "CIVIL WRONGS" ALLEGEDLY
COMMITTED BY PETITIONER AND COMPOUNDED THAT FAILURE IN
THE ADDITIONAL FAILURE TO GIVE LIMITING AND CURATIVE
INSTRUCTIONS, OR IN CONNECTION WITH, PETITIONER'S RIGHT
TO THE EFFECTIVE ASSISTANCE OF COUNSEL HAVING BEEN
VIOLATED.[8]  ...

GROUND FOUR:  PETITIONER'S GUARANTEED UNITED STATES
CONSTITUTIONAL RIGHTS TO DUE PROCESS, A FAIR TRIAL AND
IMPARTIAL JURY WERE VIOLATED BY THE TRIAL COURT'S
PRECIPITOUS INCARCERATION OF A CRUCIAL DEFENSE WITNESS
FOLLOWED BY ITS FAILURE TO DISMISS THE THREE JURORS WHO
READ ABOUT THE ARREST IN THE NEWSPAPER.[9]  ...

---

[7] More specifically, Petitioner complains of the admission
of (1) out-of-court statements by the victim regarding
Petitioner's drug distribution operation and regarding the
victim's prior abduction by Irizarry and Raymond Camacho, and
(2) statements by other witnesses that they had "heard about"
Petitioner's "hit list" or about his involvement in the victim's
abduction and/or murder.

[8] More specifically, Petitioner complains about the
introduction of certain testimony regarding his prior arrest on
drug charges, evidence seized during searches performed in
connection with the drug investigation and arrest, his drug
distribution operation, his "hit lists," a prior alleged arson
for hire (for which Petitioner was not charged), his prior
expressed desire to kill Martinez, his prior bad behavior toward
Renee Taylor, an alleged contract to kill Irizarry, the alleged
prostitution ring, his prior uncharged alleged possession of an
illegal weapon, and his confinement pending trial.

[9] After Renee Taylor testified that she had been with
Petitioner and Irizarry around the time of the shooting, the
trial court revoked her bail and remanded her to the county jail.
Following individual voir dire, the three jurors who had seen the
newspaper articles indicated that the newspaper article would not
affect their ability to be impartial and they were permitted,
over defense objection, to remain.  Petitioner alleges that
Defense counsel later moved for a mistrial based upon his

GROUND FIVE:  PETITIONER'S GUARANTEED UNITED STATES
CONSTITUTIONAL RIGHTS TO CONFRONTATION, DUE PROCESS AND
A FAIR TRIAL WERE VIOLATED BY THE TRIAL COURT'S
LIMITING THE CROSS-EXAMINATION OF A CRUCIAL STATE
WITNESS AND WHEN IT EXCLUDED RELEVANT AND EXCULPATORY
EVIDENCE WHICH WOULD HAVE CONTRADICTED THE TESTIMONY OF
TWO OTHER IMPORTANT STATE WITNESSES AND GIVE RISE TO A
REASONABLE DOUBT AS TO PETITIONER'S GUILT, OR IN
CONNECTION WITH, PETITIONER'S RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL HAVING BEEN VIOLATED.[10]  ...

GROUND SIX:  PETITIONER'S GUARANTEED UNITED STATES
CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL
WERE VIOLATED BY THE TRIAL CURT'S UNCONSTITUTIONAL
CHARGE TO THE JURY AT THE CLOSE OF THE CASE, BOTH IN
WHAT IT INCLUDED AND IN WHAT IT OMITTED, OR IN
CONNECTION WITH, PETITIONER'S RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL HAVING BEEN VIOLATED.[11]  ...

GROUND SEVEN:  PETITIONER'S RIGHTS TO PRIVACY AND
AGAINST ILLEGAL SEARCHES AND SEIZURES, DUE PROCESS AND
A FAIR TRIAL WERE VIOLATED BY THE PROSECUTOR'S USE AND
COMMENTS UPON, AS WELL AS THE TRIAL COURT'S FAILURE TO
SUPPRESS SUA SPONTE, TESTIMONY AND EVIDENCE CONCERNING
THE WARRANTLESS SEARCHES OF PETITIONER, HIS CAR AND HIS
PLACE OF BUSINESS THAT WERE MADE UNDER COLOR OF LAW, OR

---

inability to recall Taylor due to her distraught condition
following her arrest.

[10] The trial court restricted the cross-examination of
Raymond Camacho by refusing to allow his impeachment through the
introduction into evidence of a portion of a tape recording in
which Irizarry allegedly took sole responsibility for the
shooting.  The tape recording was suppressed as being
substantially inaudible.

[11] Petitioner challenges the trial court's charge on the
definition of reasonable doubt, the charge on accomplice
liability, the failure to include cautionary charges with respect
to out-of-court statements by a criminal defendant and statements
made by a co-defendant, the inclusion of an unjustified "flight"
charge, and the failure to issue a curative instruction regarding
the prosecutor's remarks about the alleged prostitution ring.

IN CONNECTION WITH, PETITIONER'S RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL HAVING.[12]  [sic]  ...

GROUND EIGHT:  PETITIONER'S GUARANTEED UNITED STATES
CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF
TRIAL COUNSEL WAS VIOLATED.[13]  ...

GROUND NINE:  PETITIONER'S GUARANTEED UNITED STATES
CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF
APPELLATE COUNSEL WAS VIOLATED.[14]  ...

---

[12] Petitioner's person, vehicle, and place of business were
searched, without a warrant, on January 12, 1990, in connection
with the investigation and arrest of Petitioner on drug charges,
which were later dropped.  A suppression motion was filed before
trial, but substituted counsel did not press the issue and the
trial court did not adjudicate the motion before Petitioner's
conviction.  The admissibility of this evidence was the subject
of Petitioner's first post-conviction relief motion.

[13] Petitioner contends that his trial counsel provided
constitutionally deficient representation by virtue of all of the
alleged trial errors enumerated above and counsel's failure to
object to them.  In addition, Petitioner contends that trial
counsel failed to subject the government's case to meaningful
adversarial testing.  He also faults trial counsel for failure to
call witnesses who allegedly overheard the excluded taped
conversation involving Mr. Camacho and for failure to call as
witnesses the audibility experts who attempted to transcribe the
tape.  Petitioner alleges that trial counsel failed to adequately
litigate the legitimacy of shells allegedly discovered by Yolanda
LaBoy at the scene of her brother's murder, seven days after the
event.  Petitioner alleges that trial counsel failed to
adequately cross-examine Irizarry regarding his immunized status
and Officer Buglione regarding the identity of his informant
(LaBoy).  Petitioner alleges that trial counsel should have
negotiated for use immunity for Renee Taylor during the hearing
to determine the admissibility of Petitioner's custodial
statement.  Petitioner alleges that trial counsel should have
presented various expert testimony.  Petitioner alleges that the
post-conviction courts prevented him from adequately litigating
his ineffective assistance claims.

[14] Plaintiff contends that appellate counsel provided
constitutionally deficient representation essentially because
their arguments on Petitioner's behalf were not sufficiently
comprehensive.

(Petition, ¶ 12.)

Respondents have answered that the Petition is time-barred and meritless.  Petitioner has filed a Traverse in support of this Petition.  This matter is now ready for decision.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially

15

indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims

16

presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.

519, 520 (1972).   A pro se habeas petition and any supporting

submissions must be construed liberally and with a measure of

tolerance.   <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998);

<u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989);

<u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969),

<u>cert. denied</u>, 399 U.S. 912 (1970).

III.   <u>ANALYSIS</u>

A.   <u>Timeliness of the Petition</u>

Respondents assert that the Petition is time-barred and

should, therefore, be dismissed.

The limitation period for a § 2254 habeas petition is set

forth in 28 U.S.C. § 2244(d),[15] which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court.   The
> limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by
> the conclusion of direct review or the expiration of
> the time for seeking such review;
>
> (B) the date on which the impediment to filing an
> application created by State action in violation of the
> Constitution or laws of the United States is removed,
> if the applicant was prevented from filing by such
> State action;
>
> (c) the date on which the constitutional right
> asserted was initially recognized by the Supreme Court,

---

[15] The limitations period is applied on a claim-by-claim
basis.   <u>See</u> <u>Fielder v. Verner</u>, 379 F.3d 113 (3d Cir. 2004), <u>cert.
denied</u>, 543 U.S. 1067 (2005); <u>Sweger v. Chesney</u>, 294 F.3d 506 (3d
Cir. 2002).   Here, all claims accrued at the same time, when the
conviction became final.

if the right has been newly recognized by the Supreme
Court and made retroactively applicable to cases on
collateral review; or

(d) the date on which the factual predicate of the
claim or claims presented could have been discovered
through the exercise of due diligence.

(2) The time during which a properly filed application
for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is
pending shall not be counted toward any period of
limitation under this section.

Thus, evaluation of the timeliness of a § 2254 petition requires

a determination of, first, when the pertinent judgment became

"final," and, second, the period of time during which an

application for state post-conviction relief was "properly filed"

and "pending."

A state-court criminal judgment becomes "final" within the

meaning of § 2244(d)(1) by the conclusion of direct review or by

the expiration of time for seeking such review, including the 90-

day period for filing a petition for writ of certiorari in the

United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417,

419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d

Cir. 1999); U.S. Sup. Ct. R. 13.

Here, Petitioner's conviction became final for federal

habeas purposes on April 10, 2001, ninety days after the Supreme

Court of New Jersey denied certification on January 10, 2001.

Thus, to be timely, his federal habeas petition was due to be

filed by January 10, 2002, unless the limitations period was statutorily or equitably tolled.

To statutorily toll the limitations period, a state petition for post-conviction relief must be "properly filed."

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by the appropriate court officer for placement into the official record.  And an application is "<u>properly</u> filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.  In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally.  But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims <u>contained in the application</u> are meritorious and free of procedural bar.

<u>Artuz v. Bennett</u>, 531 U.S. 4, 8-9 (2000) (citations and footnote omitted) (finding that a petition was not "[im]properly filed" merely because it presented claims that were procedurally barred under New York law on the grounds that they were previously determined on the merits upon an appeal from the judgment of conviction or that they could have been raised on direct appeal but were not).

Where a state court has rejected a petition for post-conviction relief as untimely, however, it was not "properly filed" and the petitioner is not entitled to statutory tolling under § 2244(d)(2).  <u>Pace v. Diguglielmo</u>, 544 U.S. 408 (2005).

This is so even where, in the alternative, the state court addresses the merits of the petition in addition to finding it untimely.  Carey v. Saffold, 536 U.S. 214, 225-26 (2002).

An application for state post-conviction relief is considered "pending" within the meaning of § 2244(d)(2), and the limitations period is statutorily tolled from the time it is "properly filed," during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, Carey v. Saffold, 536 U.S. 214 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, Swartz v. Meyers, 204 F.3d at 420-24.  However, "the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2)."  Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001).

Here, Respondents argue that the second state PCR petition, filed on January 4, 2002, was not "properly filed," and, thus, did not statutorily toll the federal limitations period.  As noted earlier, the PCR court twice held that the second state PCR petition was untimely under state law, but addressed the merits in addition.  The Appellate Division, however, expressly declined to decide the timeliness question and exercised its discretion to

address the merits.  The Supreme Court of New Jersey proffered no reason for its denial of certification.

The United States Supreme Court has noted that there are many plausible reasons why a state court may address an untimely claim; such a decision by a state court does not relieve the federal habeas court of its obligation to determine whether the state claim was "properly filed" for purposes of § 2254.  See Evans v. Chavis, 546 U.S. 189 (2006); Carey v. Saffold, 536 U.S. 214, 225-27 (2002).  Thus, here, because the Appellate Division explicitly declined to address the timeliness question, this Court must determine whether the January 4, 2002, state PCR petition was "properly filed" for purposes of the federal habeas tolling provision.  See Gorby v. McNeil, 530 F.3d 1363, 1367 (11th Cir. 2008) ("consideration of the merits cannot alone convert a motion for post-conviction relief that no one disputes is time-barred under state law into a properly filed motion for tolling purposes under AEDPA"), cert. denied, 129 S.Ct. 1592 (2009); Runyan v. Burt, 521 F.3d 942 (8th Cir. 2008) (federal court must determine whether and when state motion for post-conviction relief is "properly filed" even where state court does not address timeliness question).

Under New Jersey law, Petitioner's state PCR petitions were subject to a five-year limitations period.

A petition to correct an illegal sentence may be filed at any time.  No other petition shall be filed pursuant

22

> to this rule more than 5 years after rendition of the
> judgment or sentence sought to be attacked unless it
> alleges facts showing that the delay beyond said time
> was due to defendant's excusable neglect.

N.J.Ct.R. 3:22-12.  Thus, here, barring "excusable neglect,"

Petitioner's state PCR petition was timely only if filed by July

2, 1997, five years after entry of the judgment of conviction.

See State v. Dugan, 389 N.J.Super. 15 (App.Div.); certif. denied,

145 N.J. 373 (1996) (timeliness of post-conviction challenge to

conviction is measured from date of entry of original judgment,

even if an amended judgment is later entered; timeliness of post-

conviction challenge to specific sentence is measured from date

of entry of judgment of the challenged sentence).  Petitioner's

state PCR petition filed on January 4, 2002, more than four years

after the state limitations period had expired, and more than

nine years after the conviction, was not timely.  The state trial

court judges held that Petitioner had not established "excusable

neglect" permitting the late petition.  (Tr. of June 24, 2003, at

49-51; Tr. of Feb. 25, 2004, at 36-39.)  The second judge to

address this issue, on reconsideration, specifically held that

allegations of ineffective assistance of counsel with respect to

the first PCR petition, for failure to put forth all of

Petitioner's claims in that Petition, was not sufficient to

constitute excusable neglect.  This Court agrees with the state

trial court PCR decisions that the second state PCR petition was

untimely and that Petitioner has failed to allege facts

23

demonstrating "excusable neglect."  Accordingly, the second state PCR petition was not "properly filed," and does not statutorily toll the federal habeas limitations period.

The limitations period of § 2244(d) also is subject to equitable tolling.  Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998).  Equitable tolling applies

> only when the principles of equity would make the rigid
> application of a limitation period unfair.  Generally,
> this will occur when the petitioner has in some
> extraordinary way been prevented from asserting his or
> her rights.  The petitioner must show that he or she
> exercised reasonable diligence in investigating and
> bringing the claims.  Mere excusable neglect is not
> sufficient.

Miller, 145 F.3d at 618-19 (citations and punctuation marks omitted).  Among other circumstances, the Court of Appeals for the Third Circuit has held that equitable tolling may be appropriate "if the plaintiff has timely asserted his rights mistakenly in the wrong forum," i.e., if a petitioner has filed a timely but unexhausted federal habeas petition.  Jones, 195 F.3d at 159.  See also Duncan v. Walker, 533 U.S. 167, 183 (2001) (Stevens, J., joined by Souter, J., concurring in part) ("neither the Court's narrow holding [that the limitations period is not statutorily tolled during the pendency of a premature federal habeas petition], nor anything in the text or legislative history

24

of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petition as a matter of equity"); 533 U.S. at 192 (Breyer, J., dissenting, joined by Ginsburg, J.) (characterizing Justice Stevens's suggestion as "sound").

Petitioner has alleged no facts that would permit this Court to find a basis for equitable tolling.  He sought, and obtained, from the Appellate Division, dismissal without prejudice of his direct appeal in order to pursue his first state petition for post-conviction relief.  He was permitted to resume his direct appeal following conclusion of the first PCR proceeding.  Most of the claims asserted in his second state PCR petition had already been raised and decided in either the first state PCR petition or the direct appeal.  Apart from his claim of ineffective assistance of appellate and post-conviction counsel, all of the claims were known to him at the time he filed his first state PCR petition.  For the most part, in his second state petition for post-conviction relief, Petitioner merely re-cast his substantive allegations of error into claims of ineffective assistance of trial counsel.  Petitioner was not, in any way, prevented from asserting his claims timely in state court or in federal court.

For all the foregoing reasons, this federal habeas Petition, dated August 18, 2008,[16] more than seven years after Petitioner's

---

[16] "[A] pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."  Burns v. Morton, 134 F.3d 109, 113 (3d Cir.

state conviction became final, is not timely.  The Petition must be dismissed as untimely.

In any event, even if timely, the Petition is meritless.

B.    Prosecutorial Misconduct

Petitioner alleges that he was deprived of his constitutional right to a fair trial because of the prosecutor's remarks during opening and closing statements (inter alia characterizing Petitioner as someone who thought he was "the Godfather" in an underworld crime organization), and because of the prosecutor's alleged intimidation of witnesses.

On direct appeal, the Appellate Division rejected Petitioner's claims of prosecutorial misconduct.

> With respect to defendant's claim of prosecutorial misconduct, we reject those contentions with respect to the grand jury proceedings as harmless in light of his "supervening" convictions.  See United States v. Mechanik, 475 U.S. 66, 68, 106 S.Ct. 938, 940–41, 89 L.Ed.2d 50, 55–56 (1986); State v. Lee, 211 N.J. super. 590, 599 (App. Div. 1986).  Moreover, defendant's substantive contentions are without merit.  See R. 2:11–3(e)(2); State v. Hogan, 144 N.J. 216 (1996); Pressler, Current New Jersey Court Rules, comment 4.3 to R. 3:10–2.

> We agree that the assistant prosecutor's conduct during the course of the trial was in several respects improper, particularly in his cross-examination of Renee Taylor.  However, we do not agree that these improprieties produced an unjust result in this case.[fn]  See State v. Frost, 158 N.J. 76, 88–89 (1999).

---

1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).

> [fn] We note that this is the same prosecutor
> whose conduct in a subsequent trial caused us
> to commend that matter "to the Attorney
> General to afford him an opportunity to take
> appropriate curative action." State v.
> Torres, 328 N.J.Super. 77, 95-96 (2000).  We
> understand that some action has since been
> taken.

(Opinion of Appellate Division at 12-13 (Aug. 31, 2000).)

The U.S. Supreme Court has recognized the obligation of a
prosecutor to conduct a criminal prosecution with propriety and
fairness.

> He may prosecute with earnestness and vigor – indeed,
> he should do so.  But, while he may strike hard blows,
> he is not at liberty to strike foul ones.  It is as
> much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just one.
> ...  Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line
separating acceptable from improper advocacy is not easily drawn;
there is often a gray zone.  Prosecutors sometime breach their
duty to refrain from overzealous conduct by commenting on the
defendant's guilt and offering unsolicited personal views on the
evidence." United States v. Young, 470 U.S. 1, 7 (1985).

> The prosecutor's vouching for the credibility of
> witnesses and expressing his personal opinion
> concerning the guilt of the accused pose two dangers:
> such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on
> the basis of the evidence presented to the jury; and

27

> the prosecutor's opinion carries with it the imprimatur
> of the Government and may induce the jury to trust the
> Government's judgment rather than its own view of the
> evidence.

Id. at 18.

Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, numerous witnesses testified with respect to the scope of Petitioner's drug operations, his "hit list," and his otherwise violent behavior.  This Court agrees with the Appellate Division that, while the prosecutor's behavior may have been excessive, from the quantum and quality of evidence adduced at

trial, it is clear that the prosecutor's behavior did not deprive Petitioner of a fair trial.

Petitioner also alleges that the prosecutor intimidated certain witnesses, for example, causing the arrest of one witness on an invalid warrant (so that she left the trial and declined to return as a rebuttal witness), and reminding another witness before his testimony that he was still on probation, Petitioner fails to explain how these events impaired the fairness of his trial. That is, Petitioner fails to explain what testimony they would otherwise have provided and how that testimony would have affected his trial. Petitioner is not entitled to relief on this claim.[17]

---

[17] It is not clear that Petitioner seeks to raise before this Court the claim of prosecutorial misconduct before the grand jury that he raised in state court. In any event, any such claim is meritless.

The Fifth Amendment right to a grand jury presentation in felony cases is not applicable to the states. Alexander v. Louisiana, 405 U.S. 625, 633 (1972). Thus, any claim of defect in a state grand jury proceeding is a claim of a state-law error that does not raise federal constitutional concerns unless it rises to the level of a due process deprivation. See Estelle v. McGuire, 502 U.S. 62, 68 (1991). Cf. U.S. v. Console, 13 F.3d 641, 671-72 (3d Cir. 1993) (with the exception of a claim of racial discrimination in the selection of grand jurors, a petit jury's guilty verdict renders harmless any prosecutorial misconduct before the indicting grand jury) (citing Vasquez v. Hillery, 474 U.S. 254 (1986)). Where any error in a state grand jury proceeding is rendered harmless by a subsequent petit jury verdict, there is no due process deprivation. See, e.g., Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); United States v. Mechanik, 475 U.S. 66, 72-73 (1986) (involving a violation of Fed.R.Crim.P. 6(d)).

29

C.   <u>Admission of Hearsay Statements</u>

      Petitioner argues that he was deprived of a fair trial, and
of his Sixth Amendment right of confrontation, by the admission
of (1) out-of-court statements by the victim regarding
Petitioner's drug distribution operation, (2) out-of-court
statements by the victim regarding his prior abduction by
Irizarry and Raymond Camacho, and (3) statements by other
witnesses that they had "heard about" Petitioner's "hit list," or
about his involvement in drug distribution, or about his
involvement in the victim's abduction and/or murder.

      On direct appeal, the Appellate Division rejected
Petitioner's challenges to the admission of hearsay evidence.

        Defendant cites as error several instances of
      improperly permitted hearsay evidence of the deceased's
      statements:  First, Detective Buglione, who received
      LaBoy's information leading to defendant's drug arrest,
      testified that LaBoy told him how defendant's
      "organization" hid drugs under the hood of a car.  The
      record is otherwise replete with credible evidence of
      defendant's drug dealing, making this statement
      cumulative and harmless.

        Second, Susan Schwab, who was arrested with
      Boeglin on the drug charge, admitted selling drugs for
      defendant.  She also dated laboy, and testified that a
      few weeks before he was killed, LaBoy "called me up on
      the telephone almost hysterical.  He said that two men
      had picked him up in a car and told him that he owed
      John money and they were supposed to kill him, cut his
      throat.  But he knew one of the gentlemen and they let

_____

      Here, the petit jury found Petitioner guilty of the crimes
charged beyond a reasonable doubt, rendering harmless any error
in the state grand jury proceedings.  Petitioner is not entitled
to relief on this claim.

                              30

him go and he told me to stay away from [Boeglin]."
However, she also testified that when she saw Boeglin
after LaBoy's call and before his death, Boeglin told
her "that Angel had been taken care of ... 'ear to ear'
... that he had had his throat cut and he was dead."

LaBoy's call to Schwab was probably admissible as
an excited utterance.  Moreover, any prejudice that
could have arisen from the decedent's hearsay statement
is negated by the admissible statements of defendant
himself, implying his own connection to the abduction.

Third, defendant cites the decedent's hearsay
statements elicited through the testimony of Yolanda
LaBoy, the victim's sister, about the contents of her
report to police who were investigating her brother's
killing.  Yolanda LaBoy related having told police that
defendant was the person behind her brother's killing;
that he "had a contract out for his murder," and that
Boeglin was behind the prior abduction by his "goons"
or "hitmen."  We agree that hearsay statements of
decedent respecting defendant's involvement in the
earlier abduction by Camacho and Irizarry should not
have been admitted.  See State v. Machado, 111 N.J.
480, 489 (1988); State v. Dreher, 251 N.J.Super. 300,
317 (App.Div. 1991), certif. denied, 127 N.J. 564
(1992).  This entire line of questioning, in which the
judge himself participated, was improper.  However,
Irizarry, Camacho and Pekrol all testified to the very
facts that Yolanda LaBoy reported, largely in the form
of her own expression of opinion.  Defense counsel's
only objection at trial was that the written report
shown to LaBoy to refresh her recollection was not a
"transcript of ... what she told the police."[fn]

[fn] Defendant does not explicitly cite
Yolanda LaBoy's hearsay testimony that it was
her brother who told her he'd been abducted
by two men who were "supposed to hurt him"
but that "one of them knew him and they let
him go with a warning to lay low ... ."

In addition, defendant's own statements regarding
his intention to have the victim killed, and his
motives, were presented through substantial non-hearsay
testimony from several witnesses, to which defendant
did not object at trial.  We therefore consider this
argument under the plain error standard.  See R. 2:10-

31

> 2.  Under the circumstances, the objectionable but
> largely cumulative hearsay is unlikely to have
> contributed to an unjust result.  It was therefore
> harmless error.

(Opinion of Appellate Division at 15-18 (Aug. 31, 2000).)

The Sixth Amendment's Confrontation Clause provides that,
"In all criminal prosecutions, the accused shall enjoy the right
... to be confronted with the witnesses against him."  In Ohio v.
Roberts, 448 U.S. 56, 66 (1980), the Supreme Court held that the
Confrontation Clause does not preclude the admission of an
unavailable witness's hearsay statement if it bears "adequate
indicia of reliability."  Under Roberts, a hearsay statement
contains such "adequate indicia of reliability" if it falls
within a "firmly rooted hearsay exception" or if it bears
"particularized guarantees of trustworthiness."  448 U.S. at 66.
More recently, the Supreme Court has traced the historical roots
of the Confrontation Clause and has emphasized that not all
hearsay implicates the Confrontation Clause.  See generally
Crawford v. Washington, 541 U.S. 36 (2004).

> Where nontestimonial hearsay is at issue, it is
> wholly consistent with the Framers' design to afford
> the States flexibility in their development of hearsay
> law -- as does Roberts, and as would an approach that
> exempted such statements from Confrontation Clause
> scrutiny altogether.  Where testimonial evidence is at
> issue, however, the Sixth Amendment demands what the
> common law required:  unavailability and a prior
> opportunity for cross-examination.

Crawford, 541 U.S. at 68 (footnote omitted).  See also Davis v.
Washington, 126 S.Ct. 2266 (2006) (statements taken by police in

32

the course of an interrogation are "nontestimonial," and are not subject to the Confrontation Clause, when they are made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency; statements taken by police in the course of interrogation are "testimonial," and subject to the Confrontation Clause, when the circumstances objectively indicate that there is no ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution).  The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  <u>Crawford</u>, 541 U.S. at 59 n.9 (citing <u>Tennessee v. Street</u>, 471 U.S. 409 (1985)).

The <u>Crawford</u> rule is not, however, retroactively applicable on collateral review of convictions that were final before it was announced.  <u>Whorton v. Bockting</u>, 549 U.S. 406 (2007).  Thus, it does not afford Petitioner any relief in this proceeding.

In any event, Confrontation Clause errors are subject to harmless error analysis.  See <u>U.S. v. Reynolds</u>, 171 Fed.Appx. 961, 966, 2006 WL 760291, *4 (3d Cir. 2006) (citing <u>Delaware v. VanArsdall</u>, 475 U.S. 673, 684 (1986)); <u>United States v. Al-Sadawi</u>, 432 F.3d 419, 426 (2d Cir. 2005)).  See also <u>U.S. v.</u>

Arriola-Perez, 137 Fed.Appx. 119, 133, 2005 WL 1463502, *11 (10th Cir. 2005), cert. denied, 126 S.Ct. 1024 (2006).

Prior to the Crawford opinion, the Court of Appeals for the Third Circuit had held that, under certain circumstances, police officers may reveal information received out-of-court for the limited purpose of establishing background or context for the officers' actions.  See United States v. Sallins, 993 F.2d 344 (3d Cir. 1993).  At the same time, the Court noted the potential for abuse.

> "In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct.  His testimony that he acted 'upon information received,' or words to that effect, should be sufficient.  However, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great."

Sallins, 993 F.2d at 346 (quoting 2 McCormick on Evidence § 249, at 104 (4th ed. 1992)).  See also United States v. Lopez, 340 F.3d 169 (3d Cir. 2003) (again recommending the use of "general terms" to provide background for police activities); United States v. Price, 2006 WL 1795108 (3d Cir. June 30, 2006) ("Police officers are permitted under Sallins to explain the background context for their arrival at a scene.  When the explanation cannot be effected without relating some contents of the

34

information received, <u>Sallins</u> does not prohibit admission of such details.").

Here, as to the nontestimonial evidence admitted at trial, <u>Roberts</u> controls.  <u>See</u> <u>United States v. Hendricks</u>, 395 F.3d 173, (3d Cir. 2005).  As to the evidence that is arguably testimonial evidence, statements by the victim to Detective Buglione, Petitioner is not entitled to relief because <u>Crawford</u> is not applicable retroactively, because the evidence is admissible as background for the Detective's later actions, and because the admission of this evidence regarding the specifics of Petitioner's drug operation was largely cumulative and, therefore, harmless.

Petitioner is not entitled to relief on this claim.

D.   <u>"Other Crimes" Evidence</u>

Petitioner contends that he was deprived of his right to a fair trial by the admission of evidence regarding his other crimes and bad acts, and by the absence of appropriate limiting instructions with respect to that testimony.

On direct appeal, the Appellate Division rejected Petitioner's challenge.

> Defendant contends that "other crimes" evidence was erroneously admitted, contrary to N.J.R.E. 404(b), and without the required limiting instructions.  <u>See</u> N.J.R.E. 105.  While defendant filed a pre-trial motion to limit the State's use of certain evidence, he neither pursued that motion nor objected nor requested a limiting instruction at trial.

Most of the prior acts or crimes the jury learned about in the course of the trial related to a permissible element of the State's proofs, see N.J.R.E. 404(b), and the relevance of this evidence outweighed its potential for prejudice. See N.J.R.E. 104. See generally, State v. Nance, 148 N.J. 376 (1997); State v. Cofield, 127 N.J. 328 (1992). Defendant's involvement in drug trafficking was necessarily before the jury because it directly related to the combined motives the State attributed to defendant: (1) retaliation, under the belief that the victim had tipped police and caused his arrest on drug charges, (2) the victim's drug debt, and (3) defendant's expressed need to maintain respect and discipline in his drug operation.

Several of defendant's employees and associates testified that defendant had previously ordered physical retaliation against persons who failed to pay their drug debts. This was evidence of defendant's pattern or mode of operation, relevant on the critical issue of the identity of the instigator of the shooting.

The state presented excessive evidence that Taylor, one of defendant's girlfriends, had been humiliated by defendant in various ways. However, despite the prosecutor's excesses, which should have been better controlled by the judge, the evidence was highly relevant to the State's challenge to Taylor's credibility. The State was entitled to offer proof of her history of extreme loyalty and submission to defendant's will in the face of repeated emotional and physical mistreatment at his hands. The evidence was critical to the State's ability to discredit Taylor's reliability as a witness, and its relevance outweighed its potential for prejudice.

The prosecutor's cross-examination of this witness with respect to whether a "dating service" previously operated by defendant was actually a prostitution ring, and whether Taylor had worked as a prostitute for defendant, was highly improper in light of the prosecutor's inability to offer a good faith basis for the questions. The trial judge initially responded to defense counsel's objection with an appropriate promise to strike and instruct the jury to disregard; however, the judge failed to follow through. That was error.

> Nevertheless, Taylor as well as several other witnesses
> described the actual dating service and substantially
> rebutted the prosecutor's implication.  In the context
> of the entire trial, we do not perceive a significant
> risk of prejudice to defendant.

(Opinion of Appellate Division at 13-15 (Aug. 31, 2000).)

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.  Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial.  Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001).

"Admission of 'other crimes' evidence provides a ground for federal habeas relief only if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.'"

Bronshtein v. Horn, 404 F.3d 700, 730-31 (3d Cir. 2005) (quoting

Lesko v. Owens, 881 F.2d 44, 52 (3d Cir. 1989)).

> When evidence of a defendant's other crimes is
> introduced ..., there is sometimes "a substantial
> danger of unfair prejudice" because the jury may
> consider the evidence as proof of bad character or
> propensity to commit the crime charged.  United States
> v. Murray, 103 F.3d 310, 316 (3d Cir.1997), cert.
> denied, 525 U.S. 911, 119 S.Ct. 254, 142 L.Ed.2d 209
> (1998).  To alleviate this risk, counsel may request a
> cautionary instruction.  See generally Lesko v. Owens,
> 881 F.2d 44, 55 (3d Cir.1989), cert. denied,493 U.S.
> 1036, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990).  In some
> circumstances, such an instruction may be strongly
> advisable; in others, counsel may reasonably conclude
> that it is strategically preferable to omit such a
> request since the instruction might have the undesired
> effect of highlighting the other crimes evidence.

Buehl v. Vaughn, 166 F.3d 163, 170 (3d Cir. 1999).

Here, state law permits evidence of other bad acts under

certain circumstances.  See N.J.R.E. 404(b).  Petitioner has

pointed this Court to no Supreme Court precedent in support of

his position, and this Court has located none.  To the contrary,

in Estelle, the Supreme Court upheld the admission of evidence of

prior injuries, that were probative on the question of intent in

a trial for infant murder, and refused habeas relief for a

deficient limiting instruction.

Here, as noted by the Appellate Division, the evidence of

other crimes and prior bad acts was highly relevant.  It cannot

be said that Petitioner was deprived of a fair trial by the

admission of such evidence.  The decision of the Appellate

Division is neither contrary to, nor an unreasonable application

of, clearly established federal law, nor is it a decision based
on an unreasonable determination of the facts in light of the
evidence presented.  Petitioner is not entitled to relief on this
claim.

E.   Revocation of Renee Taylor's Bail

Petitioner argues that he was deprived of a fair trial when
the trial court revoked Renee Taylor's bail, after her testimony,
and declined to dismiss the jurors who admitted that they had
either seen the headline or the newspaper article about her
arrest.

On direct appeal, the Appellate Division rejected
Petitioner's argument that these events deprived him of a fair
trial.

> Against her attorney's advice, co-defendant
> Taylor, defendant's girlfriend who was in his company
> on the night of the murder, testified for the defense.
> At the end of her testimony, the judge revoked her bail
> and had her jailed.  A local newspaper reported her
> jailing, and the next morning the judge called the
> publication of the story to the attention of
> counsel.[fn]  The judge then voir dired the jurors and
> learned that three jurors had seen the headline, and
> one of the three had read part of the story.  In
> individual voir dire of those jurors, all three
> indicated that what they had seen in the newspaper
> would not affect their ability to be fair and
> impartial.
>
> > [fn] the headline read "Suspects Girlfriend
> > Jailed After Testifying."  The story
> > accurately reported the same arguments and
> > conflicting testimony the jurors had heard,
> > and a quote from the trial judge explaining
> > his action:  "Taylor [admitted she saw what

she believed to be a shooting' and that she
then drove the shooter out of Newark."

Defense counsel renewed his motion for a mistrial
at the end of his case, contending that Taylor's
jailing had "chilled" his witnesses, particularly
Taylor, whom he claimed he had intended to recall.
Defendant made no proffer of the additional testimony
he expected Taylor or any other witness to offer.  The
judge followed the procedure prescribed by <u>State v.</u>
<u>Bey</u>, 112 N.J. 45, 80-89 (1988), for addressing mid-
trial publicity.  We find no error in the judge's
decision denying defendant's motion for a mistrial or
in his discretionary decision not to dismiss any of the
jurors.

(Opinion of Appellate Division at 17-18 (Aug. 31, 2000).)

Certainly, one touchstone of a fair trial is an impartial

trier of the facts.

Due process means a jury capable and willing to decide
the case solely on the evidence before it, and a trial
judge ever watchful to prevent prejudicial occurrences
and to determine the effect of such occurrences when
they happen.

<u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982).

[T]he remedy for allegations of juror partiality is a
hearing in which the defendant has the opportunity to
prove actual bias.  ...

[D]ue process does not require a new trial every time a
juror has been placed in a potentially compromising
situation.  Were that the rule, few trials would be
constitutionally acceptable.  The safeguards of juror
impartiality, such as <u>voir</u> <u>dire</u> and protective
instructions from the trial judge are not infallible;
it is virtually impossible to shield jurors from every
contact or influence that might theoretically affect
their vote.

<u>Id.</u> at 215, 217.  Thus, when there is an allegation of juror

partiality, the trial judge must "'determine the circumstances,

40

the impact thereof upon the juror, and whether or not [they were] prejudicial, in a <u>hearing</u> with all interested parties permitted to participate.'" <u>Id.</u> at 216 (quoting <u>Remmer v. United States</u>, 347 U.S. 227, 230 (1954)).

Here, the trial judge promptly brought the issue of publicity regarding Ms. Taylor's arrest to the attention of counsel, <u>voir dired</u> the jurors, and made a determination that the publicity would not impact the jurors. Petitioner has made no showing of <u>actual</u> prejudice. In the absence of such a showing, he is not entitled to relief on this claim.

With respect to the alleged "chilling" of witnesses based upon the revocation of Ms. Taylor's bail and her arrest, Petitioner made no showing of impropriety with respect to that arrest, nor has he made a showing, in any court where he has made the argument, of the testimony such witnesses could have provided or that he suffered any prejudice as a result of their unwillingness to testify. Petitioner is not entitled to relief on this claim.

F.   <u>Limitation of Cross-Examination of Raymond Camacho</u>

Petitioner contends that he was deprived of a fair trial and denied his Sixth Amendment right to confront witnesses when the court limited the cross-examination of Raymond Camacho by

41

prohibiting use of a portion of a tape recording which Petitioner

alleges was exculpatory.[18]

On direct appeal, the Appellate Division rejected these

claims.

> On the State's interlocutory appeal, we previously
> affirmed the trial court's ruling that audiotapes the
> State sought to admit at trial were inaudible and
> therefore inadmissible.  State v. Boeglin, Irizarry and
> Taylor, No. A-4505-90T5F (App. Div. Oct. 31, 1991).
> Defendant had no right to offer, out of context of the
> whole, a small portion of one of the previously
> excluded tapes which he claimed to be sufficiently
> audible and exculpatory.

(Opinion of Appellate Division at 18 (Aug. 31, 2000).)

"The main and essential purpose of confrontation is to

secure for the opponent the opportunity of cross-examination."

Davis v. Alaska, 415 U.S. 308, 315-16 (1974) (emphasis in

original).  However, "'state and federal rulemakers have broad

latitude under the Constitution to establish rules excluding

evidence from criminal trials.'"  Homes v. South Carolina, 126

S.Ct. 1727, 1731 (2006) (quoting United States v. Scheffer, 523

U.S. 303, 308 (1998); also citing Crane v. Kentucky, 476 U.S.

683, 689-690 (1986); Marshall v. Lonberger, 459 U.S. 422, 438, n.

6 (1983); Chambers v. Mississippi, 410 U.S. 284, 302-303 (1973);

Spencer v. Texas, 385 U.S. 554, 564 (1967)).

---

[18] Petitioner alleges that, in one short English portion of
the tape, which was otherwise a combination of Spanish and
English, his co-defendant Irizarry took sole responsibility for
the shooting.

42

This latitude, however, has limits.  "Whether rooted
directly in the Due Process Clause of the Fourteenth
Amendment or in the Compulsory Process or Confrontation
clauses of the Sixth Amendment, the Constitution
guarantees criminal defendants 'a meaningful
opportunity to present a complete defense.'" <u>Crane</u>,
<u>supra</u>, at 690, 106 S.Ct. 2142 (quoting <u>California v.
Trombetta</u>, 467 U.S. 479, 485, 104 S.Ct. 2528, 81
L.Ed.2d 413 (1984); citations omitted).  This right is
abridged by evidence rules that "infring[e] upon a
weighty interest of the accused" and are "'arbitrary'
or 'disproportionate to the purposes they are designed
to serve.'" <u>Scheffer</u>, <u>supra</u>, at 308, 118 S.Ct. 1261
(quoting <u>Rock v. Arkansas</u>, 483 U.S. 44, 58, 56, 107
S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

        . . .

        While the Constitution thus prohibits the
exclusion of defense evidence under rules that serve no
legitimate purpose or that are disproportionate to the
ends that they are asserted to promote, well-
established rules of evidence permit trial judges to
exclude evidence if its probative value is outweighed
by certain other factors such as unfair prejudice,
confusion of the issues, or potential to mislead the
jury. ...  Plainly referring to rules of this type, we
have stated that the Constitution permits judges "to
exclude evidence that is 'repetitive ..., only
marginally relevant' or poses an undue risk of
'harassment, prejudice, [or] confusion of the issues.'"
<u>Crane</u>, <u>supra</u>, at 689-690, 106 S.Ct. 2142 (quoting
<u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679, 106 S.Ct.
1431, 89 L.Ed.2d 674 (1986); ellipsis and brackets in
original).  <u>See also</u> <u>Montana v. Egelhoff</u>, 518 U.S. 37,
42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality
opinion) (terming such rules "familiar and
unquestionably constitutional").

<u>Homes v. South Carolina</u>, 126 S.Ct. at 1731-33 (citations

omitted).

        Violations of the right to present a defense are subject to

harmless error review.  <u>See</u>, <u>e.g.</u>, <u>Crane v. Kentucky</u>, 476 U.S.

683 (1986); <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 680-84 (1986);

<u>Savage v. District Attorney of the County of Philadelphia</u>, 116
Fed.Appx. 332 (3d Cir. 2004) (unpubl.).

      The Compulsory Process clause protects the
presentation of the defendant's case from unwarranted
interference by the government, be it in the form of an
unnecessary evidentiary rule, a prosecutor's
misconduct, or an arbitrary ruling by the trial judge.
[footnote] ...

      But the right is not absolute.  The Sixth
Amendment requires more than a mere showing by the
accused that some relevant evidence was excluded from
his trial.  Rather, the accused must show how that
testimony would have been both <u>material</u> and <u>favorable</u>
to his defense. ... [E]vidence is material: "only if
there is a reasonable likelihood that the testimony
could have affected the judgment of the trier of fact."
... In [<u>United States v. </u>]Bagley, [473 U.S. 667
(1985), ]the Court further refined the materiality
definition by noting that, "[a] 'reasonable
probability' is a probability sufficient to undermine
confidence in the outcome."  <u>Bagley</u>, 473 U.S. at 682,
105 S.Ct. at 3383.

      In sum, for [a defendant] to establish that he was
convicted in violation of his Sixth Amendment right to
compulsory process, he must show: First, that he was
deprived of the opportunity to present evidence in his
favor; second, that the excluded testimony would have
been material and favorable to his defense; and third,
that the deprivation was arbitrary or disproportionate
to any legitimate evidentiary or procedural purpose.
<u>Rock v. Arkansas</u>, 483 U.S. 44, 56, 107 S.Ct. 2704,
2711, 97 L.Ed.2d 37 (1987).

<u>Government of the Virgin Islands v. Mills</u>, 956 F.2d 443, 445-46
(3d Cir. 1992) (footnote omitted).  The Court of Appeals noted
that some courts analyze such claims under the Due Process Clause
and that there is little, if any, difference in the analysis.
<u>Mills</u>, 956 F.2d at 445 n.4.

Here, the decision of the Appellate Division -- that the trial court did not err in excluding the proffered portion of the tape, which the Appellate Division found inaudible and which would have been offered out of context of the whole -- is neither contrary to, nor an unreasonable application of, clearly established federal law.  Nor is the Appellate Division decision based on an unreasonable determination of facts in light of the evidence presented.  The excluded evidence is not sufficient to undermine confidence in the outcome of the trial.

To the extent Petitioner argues that he was denied his right to present a defense by any exclusion of testimony from the officers or audio engineers involved in reviewing the tapes, he has presented no evidence that any of them could have corroborated his characterization of the recorded conversation, nor is there any evidence in the record to support that contention.  To the contrary, these individuals testified to the exceptionally poor quality of the tapes and the inability to discern much, if not all, of the conversation.  Petitioner is not entitled to relief on this claim.

G.   Jury Instructions

Plaintiff contends that the jury charge was inadequate or erroneous in the following respects:  (1) the definition of "reasonable doubt" was inadequate; (2) the charge on accomplice liability was inadequate; (3) the court should have included

45

certain cautionary charges with respect to out-of-court

statements by a criminal defendant and statements made by a co-

defendant; (4) the court included an unjustified "flight" charge;

and (5) the court failed to include a curative instruction

regarding the prosecutor's remarks about the alleged prostitution

ring.

On direct appeal, the Appellate Division disagreed with

Petitioner's contentions.

> Defendant contends that the jury charge was
> inadequate or erroneous in five aspects.  We disagree.
> First, the reasonable doubt charge was unexceptional in
> this 1992 trial.
>
> Second, the omission of the Hampton[fn] and
> Kociolek[fn] charges was not harmful error, if error at
> all.  See State v. Jordan, 147 N.J. 409, 428 (1999)
> (both charges should be given whether or not requested,
> but "failure to give the charge is not reversible error
> per se.").  Renee Taylor testified at length about
> signs of "beatings" that she claimed to have seen on
> defendant while in police custody at the time he gave
> his signed statement, thereby placing the voluntariness
> (and inferentially the credibility) of his statement in
> issue.  Significantly, defendant's statement is
> exculpatory with respect to the most serious capital
> murder charge he faced.  In that statement, defendant
> admits to his own involvement with Irizarry's obtaining
> the murder weapon and ammunition and to knowing that
> Irizarry wanted to kill LaBoy.  However, defendant
> states that he did not "have anything to do with the
> murder of Angel LaBoy" and that he did not "pay anyone
> to kill Angel."  It is plain that a Hampton charge
> would not have been in defendant's interest.
>
> > [fn] State v. Hampton, 61 N.J. 250, 272
> > (1972) (When a defendant's confession, given
> > to police while in custody, is admitted, the
> > jury must be instructed to determine whether
> > the statement was true and to disregard the

statement if it was not.)  See N.J.R.E.
104(c).

[fn] State v. Kociolek, 23 N.J. 400, 421-22
(1957) (The jury must be cautioned about the
unreliability of oral admissions because
"they are frequently misunderstood,
imperfectly remembered, and inadvertently
made."  Id. at 421.).

Third, while the flight charge was unwarranted, it
was not objected to at the time and in our view had no
potential for leading this jury to a result it
otherwise would not have reached.  See R. 2:10-2.

Fourth, the jury was adequately charged on the
elements of accomplice liability and had the
opportunity to convict defendant of lesser offenses
based on less culpable mental states.  In the context
of the entire record and the judge's general
instructions on credibility, omission of the specific
accomplice charge we later held to be required, State
v. Bielkiewicz, 267 N.J.Super. 520 (App.Div. 1993), was
harmless if error at all.  The judge instructed the
jurors that if they did not find that defendant shared
Irizarry's purpose to kill the victim, they could nto
convict him of murder as an accomplice.  Over the
State's objection, the trial judge also instructed the
jury on the lesser included offenses of aggravated and
reckless manslaughter.  There is no reasonable
likelihood that this jury convicted defendant of murder
rather than aggravated manslaughter or reckless
manslaughter as a result of the omission of a
Bielkiewicz-type charge.

Finally, the jury was adequately instructed to
consider whether the State's witnesses had expectations
of leniency that affected their testimony.

(Opinion of Appellate Division at 18-20 (Aug. 31, 2000).)

Generally, a jury instruction that is inconsistent with

state law does not merit federal habeas relief.  Where a federal

habeas petitioner challenges jury instructions given in a state

criminal proceeding,

47

[t]he only question for us is "whether the ailing
instruction by itself so infected the entire trial that
the resulting conviction violates due process."  It is
well established that the instruction "may not be
judged in artificial isolation," but must be considered
in the context of the instructions as a whole and the
trial record.  In addition, in reviewing an ambiguous
instruction ..., we inquire "whether there is a
reasonable likelihood that the jury has applied the
challenged instruction in a way" that violates the
Constitution.  And we also bear in mind our previous
admonition that we "have defined the category of
infractions that violate 'fundamental fairness' very
narrowly."  "Beyond the specific guarantees enumerated
in the Bill of Rights, the Due Process Clause has
limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law." Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

Where such a constitutional error has occurred, it generally

is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d

at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).

48

"[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104 (1972).  "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." Victor v. Nebraska, 511 U.S. 1, 22 (1994); see also Cage v. Louisiana, 498 U.S. 39, 41 (1990).  As the Supreme Court explained in Victor,

> so long as the court instructs the jury on the
> necessity that the defendant's guilt be proved beyond a
> reasonable doubt, the Constitution does not require
> that any particular form of words be used in advising
> the jury of the government's burden of proof.  Rather,

taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.

<u>Victor</u>, 511 U.S. at 6 (citations and internal quotation marks omitted).

"[A] misdescription of the burden of proof ... vitiates <u>all</u> the jury's findings. <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 281 (1993) (emphasis in original). Such an error is considered structural and thus is not subject to harmless error review. <u>See</u> <u>id.</u> at 280-82. <u>But see</u> <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

Here, the findings of the Appellate Division that there were no errors of state law in the delivery of the jury instructions, or that any errors that did occur were harmless, are entitled to deference. Certainly, Petitioner has pointed to nothing in the jury instructions that could be construed as relieving the government of its obligation to prove guilt beyond a reasonable doubt. More specifically, the trial court charged the jury that:

> Now, this defendant, as are all defendants, in criminal proceedings, is presumed to be innocent until proven guilty beyond a reasonable doubt. That presumption continues throughout the whole trial of the case and even during your deliberations in the jury room unless and until you have determined the state has proven his guilt beyond a reasonable doubt.

> The burden of proof rests upon the State and it never shifts. It remains upon the State throughout the whole trial of this case. There is no burden with respect to proof imposed upon the defendant. He is not obliged to prove his innocence. Unless the State has

50

> proven the crime charged in each of its elements,
> beyond a reasonable doubt, the defendant is entitled to
> an acquittal.
>
> Now, reasonable doubt is not a mere possible or
> imaginary doubt because, as I'm sure you will know,
> everything that relates to human affairs or is
> dependent upon oral testimony is open to some possible
> or imaginary doubt.  A reasonable doubt is an honest
> and reasonable uncertainty as to the guilt of the
> defendant existing in your minds after you have given a
> full and impartial consideration to all of the
> evidence.  It may arise from the evidence itself or it
> may arise from a lack of evidence.

(Tr. of June 8, 1992 at 19-20.)  Throughout the instructions, the

court repeatedly referred to the State's obligation to prove each

element of each offense beyond a reasonable doubt.

The decision of the Appellate Division is neither contrary

to, nor an unreasonable application of, clearly established

federal law; nor is the decision of the Appellate Division based

on an unreasonable determination of the facts in light of the

evidence presented.  Petitioner is not entitled to relief on this

claim.

H.   Fourth Amendment "Search" Issues

Petitioner argues that evidence obtained in the January drug

raid should have been suppressed.

On direct appeal, the Appellate Division rejected this

argument.

> Defendant's contention with respect to his pretrial
> motion to suppress evidence that was obtained in the
> January drug raid, and his appeal on that ground, is
> meritless.  R. 2:11-3(e)(2).  First, defendant did not
> pursue his pre-trial motion which the court had

51

reserved for trial.  Defendant did not raise the
suppression issue again until long after his murder
conviction and his subsequent indictment on drug
charges.[fn]

> [fn] In 1993, while defendant's pro se appeal
> on this conviction was pending, he was
> indicted on drug possession charges arising
> out of the January 1990 arrest that the State
> cited as one of defendant's motives for
> LaBoy's murder.  Thereafter, defendant filed
> a motion to suppress in the drug case and a
> post-conviction relief petition in this case,
> alleging that the January 1990 search
> incident to his CDS arrest was illegal, and
> therefore evidence obtained therein was
> inadmissible in defendant's murder trial.
> Defendant's PCR petition was dismissed for
> lack of jurisdiction.  See R. 3:22-3.
> However, his motion to suppress evidence in
> the drug case was granted by another Law
> Division Judge.  On the State's interlocutory
> appeal, we reversed and remanded for more
> adequate findings, State v. Julius J.
> Boeglin, IV, No. A-622-94T3F (App.Div. May 5,
> 1995), but prior to the remand hearing, the
> State dismissed the drug indictment.
>
> Defendant then pursued his PCR motion
> seeking suppression of the 1990 drug
> evidence.  The trial judge denied defendant a
> suppression hearing, holding that even if the
> evidence had been inadmissible in a trial on
> the drug charge, it was nevertheless
> inadmissible evidence of motive in
> defendant's murder trial.

In our view, defendant's failure to pursue the
motion in this case constitutes a waiver.  See R. 3:5-
7; State v. Raymond, 95 N.J.Super. 175, 179-80
(App.Div. 1967).  Defendant cannot be permitted first
to take his chances on a favorable jury verdict and
then to revive a pretrial motion to suppress after he
has been convicted.

Moreover, we agree with the trial judge, who heard
defendant's post-conviction relief motion:  even if
evidence seized on defendant's drug arrest had been

suppressed in the drug prosecution that was undertaken and later dismissed voluntarily after this trial, neither the drug arrest nor the evidence seized would have been inadmissible when offered to prove defendant's motive for LaBoy's murder.  See State v. Battle, 256 N.J.Super. 268, 276-77 (1992).

(Opinion of Appellate Division at 20-22 (Aug. 31, 2000).)

The Fourth Amendment to the U.S. Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, see Mapp v. Ohio, 367 U.S. 643 (1961), provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV.

Generally, speaking, evidence gained through a Fourth Amendment violation may not be used against a defendant at trial. See Mapp v. Ohio, 367 U.S. at 654-55; Weeks v. United States, 232 U.S. 383, 391-93 (1914).  This "exclusionary rule" is a judicially-created remedy to safeguard Fourth Amendment rights by deterring police conduct that violates those rights.  Stone v. Powell, 428 U.S. 465, 486 (1976).

In Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court examined the nature of the exclusionary rule, which it characterized as a "judicially created means of effectuating the rights secured by the Fourth Amendment" and balanced its utility as a deterrent against the risk of excluding trustworthy evidence and thus "deflect[ing]

53

the truthfinding process." Id. at 482, 490, 96 S.Ct. 3037.  Finding that, as to collateral review, the costs of the exclusionary rule outweighed the benefits of its application the Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494, 96 S.Ct. 3037.  While the federal courts are not thus deprived of jurisdiction to hear the claim, they are -- for prudential reasons -- restricted in their application of the exclusionary rule.  Id. at 494 n. 37, 96 S.Ct. 3037.

Marshall v. Hendricks, 307 F.3d 36, 81-82 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003).  "Whether the petitioner actually took advantage of the opportunity is irrelevant; so long as the opportunity was available, the bar against raising the Fourth Amendment claims on collateral review applies." Jackson v. Diguglielmo, 2006 WL 1147517, 6 (E.D. Pa. 2006) (citing Cohen v. Gillis, 2004 WL 1622026, 3 (E.D. Pa. 2004)).

Moreover, "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the bar." Gilmore v. Marks, 799 F.2d 51, 57 (3d Cir. 1986).

The Court of Appeals for the Third Circuit has recognized that there may be instances in which a full and fair opportunity to litigate was denied in state court.  See, e.g., Gilmore v. Marks, 799 F.2d at 57 (observing that a state's "failure to give at least colorable application of the correct Fourth Amendment constitutional standard" might amount to a denial of the opportunity for full and fair litigation); Boyd v. Mint, 631 F.2d

54

247, 250 (3d Cir. 1980) (assuming, without deciding, that "opportunity" simply means providing procedures by which one can litigate a Fourth Amendment claim, <u>Stone v. Powell</u> does not preclude federal habeas relief when "'the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process'" (quoting <u>Gates v. Henderson</u>, 568 F.2d 830, 840 (2d Cir. 1977), <u>cert. denied</u>, 434 U.S. 1038 (1978))).

This case does not present one of those instances in which a full and fair opportunity to litigate was denied in state court. Petitioner was able to raise the issue in a pre-trial motion, he was able to pursue the claim on appeal, and the record reflects that the state courts gave more than a "colorable" application of the correct Fourth Amendment standard to Petitioner's claims. Accordingly, Petitioner is not entitled to federal habeas relief with respect to his Fourth Amendment claims.

I.   <u>Ineffective Assistance of Counsel</u>

Petitioner contends that he was deprived of effective assistance of trial and appellate counsel with respect to the substantive claims asserted herein, as well as with respect to numerous other aspects of his trial and appeal, as detailed, <u>supra</u>, at footnote 12.

On appeal of the denial of Petitioner's second petition for post-conviction relief, the Appellate Division completely

55

rejected Petitioner's claims of ineffective assistance of counsel.

I.

A defendant who alleges that he received ineffective assistance from his counsel must establish that his "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-93 (1984).  Our supreme Court adopted this standard in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987).

> [A] defendant whose counsel performed below a level of reasonable competence must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

> [Id. at 60-61, 519 A.2d 336 (quoting Strickland, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698).]

To establish a prima facie claim of ineffective assistance of counsel, defendant must meet the two prongs of the Strickland/Fritz test.  First, he must show that the actions of his attorney were deficient in performance and not objectively reasonable.  Second, defendant must show that this deficient performance materially affected the outcome of his trial.  Further, an appellate court will not second-guess defense counsel's trial decisions which rest upon strategic or tactical considerations.

Additionally, claims of ineffective assistance of counsel raised in connection with a petition for post-conviction relief are not a substitute for a direct appeal.  Issues that have already been determined by way of direct appeal cannot be relitigated on a petition for post-conviction relief.  State v. McQuaid, 147 N.J. 464, 483, 688 A.2d 584 (1997) ("[A] defendant may not use a petition for post-conviction relief as an opportunity to relitigate a claim already decided on the merits."); R. 3:22-5.  In addition, claims that

could have been raised on direct appeal and yet were not may not be raised for the first time in the context of a petition for post-conviction relief.  R. 3:22-4.

II.

     We are satisfied that these latter two principles dispose of defendant's challenge to the prosecutor's opening and closing statements.  One of defendant's subpoints to this court on his initial appeal was a challenge to the prosecutor's conduct which, defendant contended, "had the clear capacity to produce an unjust verdict."  We rejected that assertion, noting that although the prosecutor had acted improperly in several instances, the "improprieties [did not] produce[] an unjust result in this case."  Boeglin II, (slip op. at 13).  Defendant may not seek another review on this question.

     The same result obtains with respect to defendant's assertion that his attorney was ineffective for not objecting to certain hearsay testimony.  Defendant on direct appeal argued that hearsay evidence was improperly received.  We declined to find reversible error, noting that "the objectionable but largely cumulative hearsay is unlikely to have contributed to an unjust result."  Boeglin II, (slip op. at 17.)

     Defendant's argument with respect to the receipt of this hearsay evidence is not bolstered by his reliance upon Crawford v. Washington, 541 U.S. 36, 124 s.Ct. 1354, 158 L.Ed.2d 177 (2004), a case decided twelve years after his conviction and three years after defendant filed this petition.  Because Crawford announced an entirely new principle, it is not subject to retroactive application.  Whorton v. Bockting, 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

     Defendant's next assertion is that his trial attorney was ineffective for not objecting to testimony at trial with respect to a telephone conversation between himself and Michael Swan.  The trial court, in a pre-trial hearing, had ruled that a tape of that conversation was inadmissible, a ruling we affirmed because the taping was done illegally.  (Boeglin I), supra.

Defendant's argument on this appeal misses the mark. The prosecution did not attempt to admit into evidence a tape of that conversation. Rather, Swan, one of the participants to the conversation, testified about it. Nothing within our opinion precluded such testimony, and defendant's attorney was, therefore not ineffective for not interposing this objection.

Similarly, we reject defendant's assertion that his trial attorney was ineffective for not objecting to certain evidence he characterizes as "other crimes" evidence under N.J.R.E. 404(b). On direct appeal, we rejected defendant's argument that this evidence was improperly admitted. Although we characterized certain of the evidence as "excessive," we also deemed it "highly relevant." Boeglin II (slip op. at 14).

Defendant cites five specific instances in which he contends his trial attorney was ineffective in terms of presentation of evidence at trial. We have noted a pre-trial ruling which deemed inadmissible a certain tape recording of a telephone conversation. That ruling was based upon the illegal manner in which the conversation was recorded. Certain other recordings were held inadmissible, not on the ground of illegality but on the ground that the tapes themselves were unintelligible.

Defendant now argues that his trial attorney was ineffective for not calling a witness who overheard one such conversation in which the co-defendant Irizarry allegedly exculpated defendant. In his brief, defendant asserts that his trial counsel should have called either the sound engineer who attempted to mask out the background noise on the tape or one of the law enforcement personnel who participated in creating a transcript of that phone conversation.

Defendant's argument overlooks the fact that both the trial court and this court listened to this tape and deemed it unintelligible. In our opinion affirming the inadmissibility of this tape we noted the testimony of one of the officers, who when asked if the transcript was accurate, responded, "To the best of my knowledge - to the best of my - I mean, the tapes are bad and sometimes it's very hard to understand them." Boeglin I (slip op. at 4). Attempting to call a

witness to testify as to the contents of the tape would have been fruitless in that context.

Defendant also argues that his trial attorney was ineffective for not pursuing further at trial the issue of certain bullet shells, which were discovered some time after the shooting, some at the scene of the shooting and others in another municipality. Defendant fails to establish how a different outcome at trial was reasonably probable if defense counsel had pursued this issue in any greater depth. He therefore fails to establish the second prong of the <u>Strickland</u> test.

Defendant next contends that his attorney was ineffective for the manner in which the attorney cross-examined the co-defendant, Irizarry. It was undisputed at trial that irizarry was the actual shooter, and both Irizarry and defendant were originally charged with capital murder. Irizarry testified at trial that he was the shooter in exchange for the State agreeing not to seek the death penalty against him. How to approach the cross-examination of such a critical witness clearly a matter of trial strategy. Defendant fails to demonstrate how taking another tack would have led the jury to a different result.

We also reject defendant's criticism of the manner in which his trial attorney presented the testimony of Renee Taylor and failed to present certain expert testimony. As to the latter, it was immaterial to the prosecution how far defendant physically may have been from the scene of the shooting; he was charged with directing Irizarry to commit the homicide. The balance of defendant's contention under this heading fairly fit within the parameters of trial strategy. We will not permit defendant to engage in second-guessing at this point.

Defendant also asserts his trial attorney was ineffective for not objecting to certain portions of the jury charge. In our judgment, this argument does not require extended discussion. The issues with respect to the charge that defendant raises in this petition he already raised on direct appeal, and we rejected them. The issues gain no strength because the challenges were raised as plain error on direct appeal.

We also reject defendant's contention that his trial attorney was ineffective for not pursuing the suppression of evidence obtained through a search of his place of business. This argument overlooks the fact that we, in our opinion affirming his convictions, upheld the admissibility of this evidence.  Boeglin II (slip op. at 20-22).

Defendant seeks to circumvent this bar by contending that the issue on direct appeal was premised on his Fourth Amendment rights, while the issue on this appeal is premised on his Sixth Amendment right to the effective assistance of counsel.  That distinction, while valid, does not entitle defendant to further relief.  Because we earlier affirmed the admissibility of this evidence, defendant cannot establish a reasonable probability that the outcome of the proceedings would have been different if his trial attorney had pursued this issue in a different manner.

III

We do not find persuasive defendant's contention that he was denied the effective assistance of counsel on his direct appeal.  We have noted in this opinion that certain of the issues defendant now complains of on this petition were raised on his direct appeal. Defendant argues that his appellate counsel was ineffective in the manner in which those issues were argued.  A defendant is as equally entitled to effective assistance of appellate counsel as he is to effective assistance of trial counsel.  Evitts v. Lucey, 469 U.S. 387, 1055 S.Ct. 830, 83 L.Ed.2d 821 (1985).  To prevail on a claim that appellate counsel was ineffective, a defendant must establish two elements:  that "counsel unreasonably failed to discover nonfrivolous issues," and the existence of "a reasonably probability that, but for his counsel's unreasonable failure ... he would have prevailed on his appeal."  Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756, 780 (2000).

Part of the role of appellate counsel is to winnow through the possible arguments presented by the record and focus upon those which are strongest and to present those arguments in a persuasive, cogent manner.  Buehl v. Vaughn, 166 F.3d 163, 174 (3d Cir.), cert. dismissed, 527 U.S. 1050, 119 S.Ct. 2418, 144 L.Ed.2d 815 (1999) ("One element of effective appellate

strategy is the exercise of reasonable selectivity in deciding which arguments to raise."). Counsel on appeal is not obligated to raise every possible argument the client may wish to pursue. State v. Gaither, 396 N.J.Super. 508, 515, 935 A.2d 782 (App.Div.), certif. denied, 194 N.J. 444, 945 A.2d 1287 (2008).

The essence of defendant's complaints with respect to the attorney who represented him on direct appeal is that the brief should have been expanded to include additional examples of the legal principles put forth. There is, however, no equivalence between the length of a brief and its legal merit. We view these complaints as simply dissatisfaction with the strategy selected by appellate counsel, and thus impervious to challenge by collateral attack.

...

V

Defendant's final arguments relate to the efforts of the attorney who represented him before the trial court on this petition for post-conviction relief. As with defendant's earlier arguments, based upon our review of this record, we are satisfied that defendant is unable to satisfy the second prong of the Strickland test.

State v. Boeglin, 2008 WL 2520573, *3-7 (N.J.Super. App.Div. June 26, 2008).

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  <u>Id.</u> at 695.

The performance and prejudice prongs of <u>Strickland</u> may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  <u>Id.</u> at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Ineffective assistance of counsel in post-conviction relief proceedings is not a ground for relief in a federal habeas corpus action.  See 28 U.S.C. § 2254(i).

63

Here, this Court agrees with the Appellate Division determination that Petitioner was not deprived of his right to effective assistance of counsel at any stage of the proceedings. Petitioner is not entitled to relief on this claim.

J.   State PCR Proceedings

In his extensive Petition, Petitioner refers to certain aspects of the state post-conviction relief proceedings in a manner that makes it unclear whether the allegations serve as procedural background or whether they serve as allegations of constitutional challenges to his conviction and confinement.

To the extent Petitioner seeks to challenge the state post-conviction proceedings, this Court notes that errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.  See, e.g., Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.1998), cert. denied, 526 U.S. 1065 (1999) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.... Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment."); Ferguson v. State, 1996 WL 1056727 (D.Del. 1996) and cases cited

64

therein.  Petitioner is not entitled to relief based upon any alleged deficiency in the state PCR proceedings.

To the extent Petitioner refers to the state PCR proceedings as evidencing a need for this Court to conduct an evidentiary hearing, he has failed to meet his heavy burden to rebut the presumption of correctness, of state court findings of fact, by clear and convincing evidence, nor has he established any other grounds for this Court to conduct an evidentiary hearing.  See 28 U.S.C. § 2254(e)(1), (2).

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows,

65

at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition shall be dismissed as time barred or, in the alternative, denied on the merits.  An appropriate order follows.

<u>*s/Peter G. Sheridan*</u>
PETER G. SHERIDAN, U.S.D.J.